**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NICOLE STILES,<br><br>                    Plaintiff,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION and<br>DOES 1-100, inclusive,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT AND JURY DEMAND** |

NOW COMES the Plaintiff, NICOLE STILES, by her attorneys, , BRIAN CUNHA AND ASSOCIATES, and complaining of the Defendants BOSTON SCIENTIFIC CORPORATION (hereinafter "Boston Scientific" or "Defendant") and John Does 1-100 alleges as follows:

## PARTIES

1.      Plaintiff NICOLE STILES is a resident of the State of Georgia, Carroll County, at all relevant times.

2.      Defendant Boston Scientific Corporation is a Delaware corporation with its corporate headquarters at 300 Boston Scientific Way, Marlborough, MA 01752. Defendant conducts substantial business in Georgia and is subject to the personal jurisdiction served by this Court.

3.      This Court has jurisdiction over Boston Scientific because it transacted business within the County of Henderson and elsewhere in the state Georgia   at all times relevant to this Complaint. Defendant transacts business in Georgia   by marketing, promoting, advertising, offering for sale, selling, and distributing transvaginal surgical mesh devices manufactured by Defendant. Defendant -by marketing, promoting, advertising, offering for sale, selling, and distributing transvaginal surgical mesh devices in the state of Georgia  -intentionally availed itself of the Georgia   market so as to·

render the exercise of jurisdiction over Defendant by the Georgia   courts consistent with traditional notions of fair play and substantial justice.

4.      All acts and omissions of Boston Scientific as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

5.      Plaintiff presently lacks information sufficient to specifically identify the true names or capacities, whether individual, corporate, or otherwise, of the Defendants sued herein under the fictitious names DOES 1 through 100 inclusive. The Plaintiff will amend this Complaint to show their true names and capacities if and when they are ascertained. The Plaintiff is informed and believes, and on such information and belief alleges, that each of the Defendants names as a DOE is responsible in some manner for the events and occurrences alleges in this Complaint and is liable for the relief sough herein.

## JURISDICTION AND VENUE

6.      Federal subject matter jurisdiction in this action is based upon 28 U.S.C. § 1332(a), in that there is complete diversity among Plaintiffs and Defendant and the amount in controversy exceeds $75,000.

7.      Defendant has significant contacts with this federal judicial district such that they are subject to the personal jurisdiction of the court in this district.

8.      A substantial part of the events and omissions giving rise to Plaintiffs' causes of action occurred in this federal judicial district. Pursuant to 28 U.S.C. §1391(a), venue is proper in this district.

## PLAINTIFF'S SPECIFIC ALLEGATIONS

9.      On June 23, 2014, Plaintiff got admitted to the Redmond Regional Medical Center

of Rome, Georgia under the care of surgeon Dr. Douglas R. Lawrence with a preoperative

diagnosis of pelvic pain, dysmenorrhea, endometriosis, irregular periods, menorrhagia, urinary tract

infection, and stress incontinence.

10.     On June 23, 2014, Plaintiff was implanted with Defendant's Boston Scientific

Advantage Sling System for the treatment of pelvic pain, dysmenorrhea, endometriosis, irregular

periods, menorrhagia, and stress incontinence.

11.     After the device was implanted, Plaintiff began to experience severe complications

related to the implant.

12.     On or around August 2014, Plaintiff experienced a different type of pelvic pain that

went from her left and right lower quadrant, making her left groin area the most painful.

13.     On or around September 2020, Plaintiff was diagnosed acute vaginitis, pelvic,

perineal, and vaginal pain.

14.     On September 25, 2020, Plaintiff had to undergo a transvaginal exploration and

excision of mesh, suprapubic exploration, excision of mesh for a complete total removal of mesh

and cystoscopy.

15.     Plaintiff continued to experience complications related to the implant, specifically,

exposed mesh.

16.     As a direct and proximate result of Defendant's negligence, Plaintiff has experienced

significant mental and physical pain and suffering, has sustained permanent injury, has undergone

medical treatment and will likely undergo further medical treatment and procedures, has suffered

financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages.

## FACTUAL BACKGROUND

17.     Defendant Boston Scientific designed, manufactured, packaged, labeled, marketed, sold, and distributed the Boston Scientific Advantage Sling System pelvic mesh product ("the Product") which was implanted in Plaintiff.

18.     Defendant's pelvic mesh products, including the Product, contain monofilament polypropylene mesh. Despite claims that polypropylene is inert, the scientific evidence shows that this material as implanted in Plaintiff is biologically incompatible with human tissue and promotes a negative immune response in a large subset of the population implanted with pelvic mesh products, including the Product. This negative response promotes inflammation of the pelvic tissue and can contribute to the formation of severe adverse reactions to the mesh. When mesh is inserted in the female body according to the manufacturers' instructions, it creates a non-anatomic condition in the pelvis leading to chronic pain and functional disabilities.

19.     Surgical mesh products have been used to repair abdominal hernias since the 1950s. In the 1970s, gynecologists began using surgical mesh products that were designed for hernia repair for abdominal repair to surgically repair prolapsed organs. In the 1990s, gynecologists began using this surgical mesh for the surgical treatment of POP and SUI. Manufacturers, including Defendant, began to modify the mesh used in hernia repair to be used as products specifically intended to correct POP and/or SUI. Today, Defendant sells pelvic mesh "kits" which can include not only the

surgical mesh, but also tissue fixation anchors and insertion tools. The Boston Scientific Advantage Sling System manufactured by Defendant is considered a Class II medical device.

20.     Defendant sought and obtained FDA clearance to market Advantage Sling System under Section 510(k) of the Medical Device Amendment to the Food, Drug and Cosmetics Act. Section 510(k) provides for marketing of a medical device if the device is deemed "substantially equivalent" to other predicate devices marketed prior to May 28, 1976. No formal review for safety or efficacy is required, and no formal review for safety or efficacy was ever conducted by Boston Scientific with regard to Advantage Sling System.

21.     On July 13, 2011, the FDA issued a Safety Communication wherein the FDA stated that "serious complications associated with surgical mesh for transvaginal repair of POP are not rare" (emphasis in the original).

22.     The FDA Safety Communication also stated, "Mesh contraction (shrinkage) is a previously unidentified risk of transvaginal POP repair with mesh that has been reported in the published scientific literature and in adverse event reports to the FDA. Reports in the literature associate mesh contraction with vaginal shortening, vaginal tightening and vaginal pain." (emphasis in original).

23.     In a December 2011 Joint Committee Opinion, the American College of Obstetricians and Gynecologists ("ACOG") and the American Urogynecologic Society ("AUGS") also identified physical and mechanical changes to the mesh inside the body as a serious complication associated with vaginal mesh, stating:

> There are increasing reports of vaginal pain associated with changes that can occur with mesh (contraction, retraction, or shrinkage) that result in taut sections of mesh . . .  Some of these women will require surgical intervention to correct the condition, and some of the pain appears to be intractable.

24.     The ACOG/AUGS Joint Committee Opinion also recommended, among other things, that "[p]elvic organ prolapse vaginal mesh repair should be reserved for high-risk individuals in whom the benefit of mesh placement may justify the risk."

25.     The FDA Safety Communication further indicated that the benefits of using transvaginal mesh products instead of other feasible alternatives did not outweigh the associated risks. Specifically, the FDA Safety Communication stated: "it is not clear that transvaginal POP repair with mesh is more effective than traditional non-mesh repair in all patients with POP and it may expose patients to greater risk."

26.     Contemporaneously with the Safety Communication, the FDA released a publication titled "Urogynecologic Surgical Mesh: Update on the Safety and Effectiveness of Transvaginal Placement for Pelvic Organ Prolapse" (the White Paper). In the White Paper, the FDA noted that the published, peer-reviewed literature demonstrates that "[p]atients who undergo POP repair with mesh are subject to mesh-related complications that are not experienced by patients who undergo traditional surgery without mesh."

27.     The FDA summarized its findings from its review of the adverse event reports and applicable literature stating that it "has NOT seen conclusive evidence that using transvaginally placed mesh in POP repair improves clinical outcomes any more than traditional POP repair that does not use mesh, and it may expose patients to greater risk." (emphasis in original).

28.     The FDA White Paper further stated that "these products are associated with serious adverse events . . . compounding the concerns regarding adverse events are performance data that fail to demonstrate improved clinical benefit over traditional non-mesh repair."

29.     In its White Paper, the FDA advises doctors to, *inter alia*, "[r]ecognize that in most cases, POP can be treated successfully without mesh thus avoiding the risk of mesh-related

complications." The FDA concludes its White Paper by stating that it "has identified serious safety and effectiveness concerns over the use of surgical mesh for the transvaginal repair of pelvic organ prolapse."

30.     As is known to the Defendant, the risks associated with POP repair are the same as SUI repair. However, the data regarding the magnitude and frequency of these known risks are not as developed as the data on POP repair. The FDA recognized this, as demonstrated by its Section 522 Orders issued to manufacturers of pelvic mesh products used to treat SUI in January of 2012.

31.     In September 2011, the FDA acknowledged the need for additional data and noted in "Surgical Mesh For Treatment of Women with Pelvic Organ Prolapse and Stress Urinary Incontinence" that the literature and information developing on SUI repair with mesh "indicates that serious complications can occur . . . [and] a case can be made for additional premarket and/or post market studies to better address the risk/benefit of all mesh products used for SUI."

32.     Defendant did not, and has not, adequately studied the extent of the risks associated with Advantage Sling System. In January 2012, the FDA recognized the risk to women and mandated additional studies to further investigate these risks.

33.     Defendant knew or should have known about Advantage Sling System's risks and complications identified in the FDA Safety Communication and the ACOG/AUGS Joint Committee Opinion.

34.     Defendant knew or should have known that Advantage Sling System unreasonably exposed patients to the risk of serious harm while conferring no benefit over available feasible alternatives that do not involve the same risks.

35.     The scientific evidence shows that the material from which Advantage Sling System are made is biologically incompatible with human tissue and promotes a negative immune response in a large subset of the population implanted with Advantage Sling System, including Plaintiff.

36.     This negative response promotes inflammation of the pelvic tissue and contributes to the formation of severe adverse reactions to the mesh, such as those experienced by Plaintiff.

37.     The FDA defines both "degradation" and "fragmentation" as "device problems" to which the FDA assigns a specific "device problem code." "Material Fragmentation" is defined as an "[i]ssue associated with small pieces of the device breaking off unexpectedly" and "degraded" as an "[i]ssue associated with a deleterious change in the chemical structure, physical properties, or appearance in the materials that are used in device construction." Advantage Sling System was unreasonably susceptible to degradation and fragmentation inside the body.

38.     Advantage Sling System was unreasonably susceptible to shrinkage and contraction inside the body.  Defendant should have known of this serious risk and warned physicians and patients.

39.     Advantage Sling System was unreasonably susceptible to "creep" or the gradual elongation and deformation when subject to prolonged tension inside the body.

40.     To this day, Advantage Sling System has been and continues to be marketed to the medical community and to patients as a safe, effective, reliable, medical device, implanted by safe and effective, minimally invasive surgical techniques, and as safer and more effective as compared to available feasible alternative treatments of pelvic organ prolapse and stress urinary incontinence, and other competing products.

41.     A woman who elects to have her SUI or POP surgically treated has several options. SUI can be corrected through traditional abdominal surgery using sutures to attach the urethra to a

ligament in the pelvis (known as the "Burch procedure"). SUI can also be surgically addressed using synthetic materials placed under the urethra to provide support. POP can be corrected through abdominal or transvaginal surgery and using biologic, composite, or synthetic materials.

42.    Defendant omitted and downplayed the risks, dangers, defects, and disadvantages of Advantage Sling System, and advertised, promoted, marketed, sold and distributed Advantage Sling System as a safe medical device when Defendant knew or should have known that Advantage Sling System was not safe for its intended purposes, and that Advantage Sling System would cause, and did cause, serious medical problems, and in some patients, including Plaintiff, catastrophic injuries. Further, while some of the problems associated with Advantage Sling System were made known to physicians, the magnitude and frequency of these problems were not disclosed and were hidden from physicians.

43.    Contrary to Defendant's representations and marketing to the medical community and to the patients themselves, Advantage Sling System has high rates of failure, injury, and complications, fails to perform as intended, requires frequent and often debilitating re-operations, and has caused severe and irreversible injuries, conditions, and damage to a significant number of women, including Plaintiff, making them defective under the law.

44.    The specific nature of Advantage Sling System's defects includes, but is not limited to, the following:

    a.  The use of polypropylene in Advantage Sling System and the immune reactions that result from such material, causing adverse reactions and injuries;

    b.  The design of Advantage Sling System to be inserted into and through an area of the body with high levels of bacteria that can adhere to the mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

    c. Biomechanical issues with the design of Advantage Sling System, including, but not limited to, the propensity of Advantage Sling System to contract or shrink inside the body, that in turn cause surrounding tissue to be inflamed, become fibrotic, and contract, resulting in injury;

    d. The use and design of arms and anchors in Advantage Sling System, which, when placed in women, are likely to pass through contaminated spaces and that can injure major nerve routes in the pelvic region;

    e. The propensity of Advantage Sling System for "creep," or to gradually elongate and deform when subject to prolonged tension inside the body;

    f. The inelasticity of Advantage Sling System, causing them to be improperly mated to the delicate and sensitive areas of the vagina and pelvis where they are implanted, and causing pain upon normal daily activities that involve movement in the pelvic region (e.g., intercourse, defecation, walking);

    g. The propensity of Advantage Sling System for degradation or fragmentation over time, which causes a chronic inflammatory and fibrotic reaction, and results in continuing injury over time;

    h. The creation of a non-anatomic condition in the pelvis leading to chronic pain and functional disabilities when the mesh is implanting according to the manufacturers' instructions.

45.    Advantage Sling System is also defective due to Defendant's failure to adequately warn or instruct Plaintiff and/or her health care providers of subjects including, but not limited to, the following:

    a. Advantage Sling System's propensities to contract, retract, and/or shrink inside the body;

    b. Advantage Sling System's propensities for degradation, fragmentation and/or creep;

    c. Advantage Sling System's inelasticity preventing proper mating with the pelvic floor and vaginal region;

d.  The frequency and manner of mesh erosion or extrusion;

e.  The risk of chronic inflammation resulting from Advantage Sling System;

f.  The risk of chronic infections resulting from Advantage Sling System;

g.  The risk of permanent vaginal or pelvic scarring as a result of Advantage Sling System;

h.  The risk of recurrent, intractable pelvic pain and other pain resulting from Advantage Sling System;

i.  The need for corrective or revision surgery to adjust or remove Advantage Sling System;

j.  The severity of complications that could arise as a result of implantation of Advantage Sling System;

k.  The hazards associated with Advantage Sling System;

l.  Advantage Sling System's defects described herein;

m.  Treatment of pelvic organ prolapse and stress urinary incontinence with Advantage Sling System is no more effective than feasible available alternatives;

n.  Treatment of pelvic organ prolapse and stress urinary incontinence with Advantage Sling System exposes patients to greater risk than feasible available alternatives;

o.  Treatment of pelvic organ prolapse and stress urinary incontinence with Advantage Sling System makes future surgical repair more difficult than feasible available alternatives;

p.  Use of Advantage Sling System puts the patient at greater risk of requiring additional surgery than feasible available alternatives;

q.  Removal of Advantage Sling System due to complications may involve multiple surgeries and may significantly impair the patient's quality of life; and

r.  Complete removal of Advantage Sling System may not be possible and may not result in complete resolution of the complications, including pain.

46.     Defendant under reported and continues to underreport information about the propensity of Advantage Sling System to fail and cause injury and complications and have made

unfounded representations regarding the efficacy and safety of Advantage Sling System through various means and media.

47.     Defendant failed to perform proper and adequate testing and research in order to determine and evaluate the nature, magnitude and frequency of the risks attendant to Advantage Sling System.

48.     Defendant failed to design and establish a safe, effective procedure for removal of Advantage Sling System, or to determine if a safe, effective procedure for removal of Advantage Sling System exists.

49.     Feasible and suitable alternatives to Advantage Sling System have existed at all times relevant that do not present the same frequency or severity of risks as do Advantage Sling System.

50.     Advantage Sling System was at all times utilized and implanted in a manner foreseeable to Defendant, as Defendant generated the instructions for use, created the procedures for implanting the devices, and trained the implanting physician.

51.     Defendant knowingly provided incomplete and insufficient training and information to physicians regarding the use of Advantage Sling System and the aftercare of patients implanted with Advantage Sling System.

52.     Advantage Sling System implanted in Plaintiff was in the same or substantially similar condition as they were when they left Defendant's possession, and in the condition directed by and expected by Defendant.

53.     The injuries, conditions, and complications suffered by numerous women around the world who have been implanted with Advantage Sling System include, but are not limited to, erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation,

dyspareunia (pain during sexual intercourse), blood loss, neuropathic and other acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, and chronic pelvic pain.

54.     In many cases, including Plaintiff, women have been forced to undergo extensive medical treatment including, but not limited to, operations to locate and remove mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the use of pain control and other medications, injections into various areas of the pelvis, spine, and the vagina, and operations to remove portions of the female genitalia.

55.     The medical and scientific literature studying the effects of mesh products like Advantage Sling System, like that of the product implanted in Plaintiff, has examined each of these injuries, conditions, and complications, and has reported that they are causally related to mesh products.

56.     Removal of contracted, eroded and/or infected mesh can require multiple surgical interventions for removal of mesh and results in scarring on fragile compromised pelvic tissue and muscles.

57.     At all relevant times herein, Defendant continued to promote Advantage Sling System as safe and effective even when no clinical trials had been done supporting long- or short-term efficacy or safety.

58.     In doing so, Defendant failed to disclose the known risks and failed to warn of known or scientifically knowable dangers and risks associated with Advantage Sling System, including the magnitude and frequency of these risks

59.     At all relevant times herein, Defendant failed to provide sufficient warnings and instructions that would have put Plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of Advantage Sling System.

60.     Advantage Sling System as designed, manufactured, distributed, sold and/or supplied by Defendant was defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendant's knowledge of lack of safety.

61.     The Advantage Sling System was intended to treat Plaintiff for uterovaginal prolapse, the use for which Defendant marketed the product.

62.     Plaintiff's treating physicians implanted the Advantage Sling System properly and appropriately.

63.     At all times material hereto, Defendant failed to comply or properly comply with state and Federal law in connection with the Advantage Sling System.

64.     The risk of serious injuries was known or should have been known to Defendant, but in spite of these risks, Defendant continued to market the Advantage Sling System to physicians and patients, including Plaintiff, Nicole  Stiles , without adequate warnings.

65.     Had Defendant properly disclosed the risks associated with the Advantage Sling System, Plaintiff would not have used it.

66.     The injuries suffered by Plaintiff, were caused by the wrongful acts, omissions, and fraudulent representations of Defendant.

67.     As a result of having Advantage Sling System implanted in her, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

## COUNT I: NEGLIGENCE

68.     All previous paragraphs are hereby incorporated by reference as if fully set forth herein.

69.     Defendant had a duty to individuals, including Plaintiff, to use reasonable care in designing, manufacturing, marketing, labeling, packaging and selling Advantage Sling System.

70.     Defendant was negligent in failing to use reasonable care as described herein in designing, manufacturing, marketing, labeling, packaging and selling Advantage Sling System. Defendant breached its aforementioned duty by, among other things:

a.   Failing to design Advantage Sling System so as to avoid an unreasonable risk of harm to women in whom Advantage Sling System were implanted, including Plaintiff;

b.   Failing to manufacture Advantage Sling System so as to avoid an unreasonable risk of harm to women in whom Advantage Sling System were implanted, including Plaintiff;

c.   Failing to use reasonable care in the testing of Advantage Sling System so as to avoid an unreasonable risk of harm to women in whom Advantage Sling System were implanted, including Plaintiff;

d.   Failing to use reasonable care in inspecting Advantage Sling System so as to avoid an unreasonable risk of harm to women in whom Advantage Sling System were implanted, including Plaintiff;

e.   Failing to use reasonable care in the training and instruction to physicians for the safe use of Advantage Sling System;

f.   Failing to use reasonable care in studying Advantage Sling System to evaluate their safety and to determine the nature, magnitude, and frequency of serious, life threatening complications that were known or knowable; and

g.   Otherwise negligently or carelessly designing, manufacturing, marketing, labeling, packaging and/or selling Advantage Sling System.

71. The reasons that Defendant's negligence caused Advantage Sling System to be unreasonably dangerous and defective include, but are not limited to:

    a. The use of polypropylene material in Advantage Sling System and the immune reaction that results from such material, causing adverse reactions and injuries;

    b. The design of Advantage Sling System to be inserted into and through an area of the body with high levels of bacteria that adhere to the mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

    c. Biomechanical issues with the design of Advantage Sling System, including, but not limited to, the propensity of Advantage Sling System to contract or shrink inside the body, that in turn cause surrounding tissue to be inflamed, become fibrotic, and contract, resulting in injury;

    d. The use and design of arms and anchors in Advantage Sling System, which, when placed in women, are likely to pass through contaminated spaces and injure major nerve routes in the pelvic region;

    e. The propensity of Advantage Sling System for "creep," or to gradually elongate and deform when subject to prolonged tension inside the body;

    f. The inelasticity of Advantage Sling System, causing them to be improperly mated to the delicate and sensitive areas of the pelvis where they are implanted, and causing pain upon normal daily activities that involve movement in the pelvis (e.g., intercourse, defecation);

    g. The propensity of Advantage Sling System for degradation or fragmentation over time, which causes a chronic inflammatory and fibrotic reaction, and results in continuing injury over time;

    h. The creation of a non-anatomic condition in the pelvis leading to chronic pain and functional disabilities when the mesh is implanting according to the manufacturers' instructions.

72. Defendant also negligently failed to warn or instruct Plaintiff and/or her health care providers of subjects including, but not limited to, the following:

a.   Advantage Sling System's propensities to contract, retract, and/or shrink inside the body;

b.   Advantage Sling System's propensities for degradation, fragmentation and/or creep;

c.   Advantage Sling System's inelasticity preventing proper mating with the pelvic floor and vaginal region;

d.   The rate and manner of mesh erosion or extrusion;

e.   The risk of chronic inflammation resulting from Advantage Sling System;

f.   The risk of chronic infections resulting from Advantage Sling System;

g.   The risk of permanent vaginal or pelvic scarring as a result of Advantage Sling System;

h.   The risk of recurrent, intractable pelvic pain and other pain resulting from Advantage Sling System;

i.   The need for corrective or revision surgery to adjust or remove Advantage Sling System;

j.   The severity of complications that could arise as a result of implantation of Advantage Sling System;

k.   The hazards associated with Advantage Sling System;

l.   Advantage Sling System's defects described herein;

m.   Treatment of pelvic organ prolapse and stress urinary incontinence with Advantage Sling System is no more effective than feasible available alternatives;

n.   Treatment of pelvic organ prolapse and stress urinary incontinence with Advantage Sling System exposes patients to greater risk than feasible available alternatives;

o.   Treatment of pelvic organ prolapse and stress urinary incontinence with Advantage Sling System makes future surgical repair more difficult than feasible available alternatives;

p.   Use of Advantage Sling System puts the patient at greater risk of requiring additional surgery than feasible available alternatives;

q.   Removal of Advantage Sling System due to complications may involve multiple surgeries and may significantly impair the patient's quality of life; and

    r.   Complete removal of Advantage Sling System may not be possible and may not result in complete resolution of the complications, including pain.

73.    As a direct and proximate result of Defendant's negligence, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT II: STRICT LIABILITY – DESIGN DEFECT

74.    All previous paragraphs are hereby incorporated by reference as if fully set forth herein.

75.    Advantage Sling System implanted in Plaintiff, Nicole  Stiles  was not reasonably safe for its intended uses and was defective as described herein with respect to their design. As previously stated, Advantage Sling System's design defects include, but are not limited to:

    a.   The use of polypropylene material in Advantage Sling System and the immune reaction that results from such material, causing adverse reactions and injuries;

    b.   The design of Advantage Sling System to be inserted into and through an area of the body with high levels of bacteria that adhere to the mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

    c.   Biomechanical issues with the design of Advantage Sling System, including, but not limited to, the propensity of Advantage Sling System to contract or shrink

inside the body, that in turn cause surrounding tissue to be inflamed, become fibrotic, and contract, resulting in injury;

d.  The use and design of arms and anchors in Advantage Sling System, which, when placed in women, are likely to pass through contaminated spaces and injure major nerve routes in the pelvic region;

e.  The propensity of Advantage Sling System for "creep," or to gradually elongate and deform when subject to prolonged tension inside the body;

f.  The inelasticity of Advantage Sling System, causing them to be improperly mated to the delicate and sensitive areas of the pelvis where they are implanted, and causing pain upon normal daily activities that involve movement in the pelvis (e.g., intercourse, defecation);

g.  The propensity of Advantage Sling System for degradation or fragmentation over time, which causes a chronic inflammatory and fibrotic reaction, and results in continuing injury over time;

h.  The creation of a non-anatomic condition in the pelvis leading to chronic pain and functional disabilities when the mesh is implanting according to the manufacturers' instructions, and

i.  The use of polypropylene material in Advantage Sling System and the failure to provide adequate directions for use (DFU) and training.

76.     As a direct and proximate result of Advantage Sling System's aforementioned defects as described herein, Plaintiff, Nicole Stiles  has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo future medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages.

77.     Defendant is strictly liable to Plaintiff, Nicole  Stiles  for designing, manufacturing, marketing, labeling, packaging and selling a defective product.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT III : STRICT LIABILITY MANUFACTURING DEFECT

78.     All previous paragraphs are hereby incorporated by reference as if fully set forth herein.

79.     Advantage Sling System implanted in Plaintiff, was not reasonably safe for its intended uses and was defective as described herein as a matter of law with respect to their manufacture, in that it deviated materially from Defendant's design and manufacturing specifications in such a manner as to pose unreasonable risks of serious bodily harm to Plaintiff.

80.     Defendant is strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling defective products.

81.     As a direct and proximate result of Advantage Sling System's aforementioned defects as described herein, Plaintiff, Nicole  Stiles  has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and/or corrective surgery and hospitalization, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT IV: STRICT LIABILITY – FAILURE TO WARN

82. All previous paragraphs are hereby incorporated by reference as if fully set forth herein.

83. Advantage Sling System implanted in Plaintiff was not reasonably safe for its intended uses and was defective as described herein as a matter of law due to its lack of appropriate warnings. Specifically, Defendant did not provide sufficient or adequate warnings regarding, among other subjects:

   a. Advantage Sling System's propensities to contract, retract, and/or shrink inside the body;

   b. Advantage Sling System's propensities for degradation, fragmentation and/or creep;

   c. Advantage Sling System's inelasticity preventing proper mating with the pelvic floor and vaginal region;

   d. The frequency and manner of mesh erosion or extrusion;

   e. The risk of chronic inflammation resulting from Advantage Sling System;

   f. The risk of chronic infections resulting from Advantage Sling System;

   g. The risk of permanent vaginal or pelvic scarring as a result of Advantage Sling System;

   h. The risk of recurrent, intractable pelvic pain and other pain resulting from Advantage Sling System;

   i. The need for corrective or revision surgery to adjust or remove Advantage Sling System;

   j. The severity of complications that could arise as a result of implantation of Advantage Sling System;

   k. The hazards associated with Advantage Sling System;

   l. Advantage Sling System's defects described herein;

   m. Treatment of pelvic organ prolapse and stress urinary incontinence with Advantage Sling System is no more effective than feasible available alternatives;

n.  Treatment of pelvic organ prolapse and stress urinary incontinence with Advantage Sling System exposes patients to greater risk than feasible available alternatives;

o.  Treatment of pelvic organ prolapse and stress urinary incontinence with Advantage Sling System makes future surgical repair more difficult than feasible available alternatives;

p.  Use of Advantage Sling System puts the patient at greater risk of requiring additional surgery than feasible available alternatives;

q.  Removal of Advantage Sling System due to complications may involve multiple surgeries and may significantly impair the patient's quality of life;

r.  Complete removal of Advantage Sling System may not be possible and may not result in complete resolution of the complications, including pain; and

s.  The nature, magnitude and frequency of complications that could arise as a result of implantation of Advantage Sling System.

84.    Defendant is strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling a defective.

85.    As a direct and proximate result of Advantage Sling System's aforementioned defects as described herein, Plaintiff, Nicole  Stiles  has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT V: BREACH OF EXPRESS WARRANTY

86.     All previous paragraphs are hereby incorporated by reference as if fully set forth herein.

87.     Defendant made assurances as described herein to the general public, hospitals and health care professionals that Advantage Sling System was safe and reasonably fit for its intended purposes.

88.     Plaintiff and/or her healthcare provider chose Advantage Sling System based upon Defendant's warranties and representations as described herein regarding the safety and fitness of Advantage Sling System.

89.     Plaintiff, individually and/or by and through her physician, reasonably relied upon Defendant's express warranties and guarantees that Advantage Sling System were safe, merchantable, and reasonably fit for their intended purposes.

90.     Defendant breached these express warranties because Advantage Sling System implanted in Plaintiff was unreasonably dangerous and defective as described herein and not as Defendant had represented.

91.     Defendant's breach of their express warranties resulted in the implantation of an unreasonably dangerous and defective product in the body of Plaintiff, placing said Plaintiff's health and safety in jeopardy.

92.     As a direct and proximate result of Defendant's breach of the aforementioned express warranties, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT V: BREACH OF IMPLIED WARRANTY

93.     All previous paragraphs are hereby incorporated by reference as if fully set forth herein.

94.     Defendant impliedly warranted that Advantage Sling System was merchantable and was fit for the ordinary purposes for which it was intended.

95.     When Advantage Sling System was implanted in Plaintiff, to treat her pelvic organ prolapse and/or stress urinary incontinence, Advantage Sling System was being used for the ordinary purposes for which it was intended.

96.     Plaintiff, individually and/or by and through her physician, relied upon Defendant's implied warranties of merchantability in consenting to have Advantage Sling System implanted in her.

97.     Defendant breached its implied warranties of merchantability because Advantage Sling System implanted in Plaintiff was neither merchantable nor suited for its intended uses as warranted.

98.     Defendant's breach of their implied warranties resulted in the implantation of unreasonably dangerous and defective products in the body of Plaintiff, placing Plaintiff's health and safety in jeopardy.

99.     As a direct and proximate result of Defendant's breach of the aforementioned implied warranties, Plaintiff, Nicole  Stiles  has experienced significant mental and physical pain

and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. Judgment in favor of Plaintiff and against Defendant, for damages in such amounts as may be proven at trial;

b. Compensation for both economic and non-economic losses, including but not limited to medical expenses, loss of earnings, disfigurement, pain and suffering, mental anguish, and emotional distress, in such amounts as may be proven at trial;

c. Punitive and/or exemplary damages in such amounts as may be proven at trial;

d. Attorneys' fees and costs;

e. Interest; and

f. Any and all further relief, both legal and equitable, that the Court may deem just and proper.

DATED:        September 14, 2022                Respectfully submitted,
                                                By their attorneys:


                                                By:    /s/ Brian Cunha

Brian Cunha, Esq.
**Brian Cunha & Associates**
311 Pine Street
Fall River, MA 02720
(508) 675-9500


Nicholas R. Farnolo (*pro hac vice* to be applied for)
**Napoli SHKOLNIK, PLLC**
400 Broadhollow Road, Suite 305
Melville, NY 11747
(212) 397-1000
Nfarnolo@napolilaw.com
*Attorneys for Plaintiff*